UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE NORTHWEST IRONWORKERS HEALTH AND SECURITY FUND, et al.,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>PETERSON REBAR PLACEMENT, LLC,<br><br>　　　　　　　　Defendant. | CASE NO. 2:22-cv-01541-TL<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT |

This matter is before the Court on Plaintiffs Boards of Trustees of the Northwest Ironworkers Health and Security Fund, Northwest Ironworkers Retirement Trust, Northwest Field Ironworkers Annuity Trust Fund, and Northwest Ironworkers & Employers Apprenticeship & Training Trust Fund's (collectively, the "Trusts") motion for default judgment against Defendant Peterson Rebar Placement, LLC ("PRP"). Dkt.

No. 8. PRP, which has not appeared in this action, did not file a response to the motion. Having considered the motion and the relevant record, the Court GRANTS the motion.[1]

## I. BACKGROUND

The Trusts are joint labor-management employee-benefit Trusts, created and operated pursuant to Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Dkt. No. 1 ¶ 2. The Trusts provide certain benefits to covered employees and their dependents. Dkt. No. 21 ¶ 11.

The Trusts are funded by employer contributions made on behalf of employees who are covered by a collective bargaining agreement, entitled the Master Labor Agreement (the "MLA"), between Ironworkers District Council of the Pacific Northwest and its affiliated Iron Workers Local Unions (collectively, the "Unions") and the employers of its members, including PRP. *See id*. ¶¶ 4–6, 9, Ex. B[2] (2020–21 MLA)[3]; Dkt. No. 26 ¶ 3, Ex. A (2021–24 MLA); Dkt. No. 1 ¶¶ 3, 9–11. PRP executed an Ironworker Independent Agreement ("IIA") binding it to the terms of the MLA on September 24, 2018. Dkt. No. 21 ¶¶ 5–7, 9, Ex. A (IIA). PRP employs some members of the Unions and, under the terms of the MLA, is responsible for paying and reporting monthly contributions to the Trust. *See id*. ¶¶ 5–7; Dkt. No. 1 ¶¶ 9–11.

---

[1] The Trusts did not request oral argument (*see* Dkt. No. 8 at 1), and the Court concludes that oral argument would not be helpful to its disposition of this motion. *See* LCR 7(b)(4).
[2] When referring to the Trusts' exhibits, the Court cites to the page numbers in the bottom right-hand corner of the exhibits.
[3] The 2020–21 MLA appears on pages 47–84 of Exhibit B.

The MLA details the "basis for the contributions to the Trusts," stating that "for the Health and Security, Pension, Vacation/Paid Time Off, Annuity, and Apprenticeship, employers must contribute to the Trusts for all compensable hours." Dkt. No. 21 ¶ 7; Dkt. No. 21, Ex. B at 67–70 (describing the required fringe benefit contributions); Dkt. No. 26, Ex. A at 24–27 (same). The MLA also sets forth the contribution rate, which must be paid by PRP on an employee's behalf on a dollars-per-hour-worked basis. *See* Dkt. No. 21, Ex. B at 62–63 (listing employer contribution rates); Dkt. No. 26, Ex. A at 19–20 (same). The specific terms of the Trusts are set forth in the Parties' Trust Agreements, including the numerous amendments thereto, and are incorporated by reference in the MLA. *See* Dkt. No. 21, Ex. B at 67–70; Dkt. No. 26, Ex. A at 24–27; Dkt. No. 21 ¶¶ 19–24, Exs. D–G. Employers who fail to make their monthly contributions by the 25th day of the month in which the contributions are due must pay liquidated damages at 16% of the outstanding amount of contributions due and interest at 18% per annum until the contributions are paid. *See* Dkt. No. 21, Exs. D–G; *see also* Dkt. No. 21, Ex. B at 70 (stating the same); Dkt. No. 26, Ex. A at 27 (same). The Trust Agreements further provide that the employer shall be liable for reasonable attorney fees, litigation costs, and other reasonable expenses, including auditor fees, incurred in recovering delinquent payments. *See* Dkt. No. 21, Exs. D–G; *see also* Dkt. No. 21, Ex. B at 70 (stating the same); Dkt. No. 26, Ex. A at 27 (same).

The Trusts allege that PRP failed to timely report and pay its contributions to the Trusts for work performed by employees covered by the MLA/IIA and the Trust Agreements. Dkt. No. 1 ¶¶ 12–17; Dkt. No. 21 ¶¶ 13–14, 25–27; Dkt. No. 23 ¶¶ 3–6, 8.

For work performed between October 2021 and June 2022, PRP reported and paid its contributions after the monthly due date. Dkt. No. 21 ¶ 13, Ex I (late fee notices and remittance reports for this period); Dkt. No. 1 ¶¶ 12–13. Although PRP ultimately made the required reports and contributions for the October 2021 through June 2022 delinquent period, it has not paid the $18,076.66 in liquidated damages and the $5,321.90 in accrued interest for this delinquent period. Dkt. No. 21 ¶¶ 25, 27, Ex. H (Oct. 2021 to June 2022 damages report); Dkt. No. 1 ¶ 15. Additionally, for work performed between July and December 2022, PRP has not reported or paid its contributions. (Dkt. No. 21 ¶¶ 14, 27; Dkt. No. 1 ¶¶ 12, 16. Based on the Trusts' audit,[4] PRP owes $190,412.26 in unpaid contributions, $31,214.32 in liquidated damages, $16,846.63 in accrued interest, and $1,902.00 in audit accounting fees for the July through December 2022 delinquent period. Dkt. No. 21 ¶¶ 15–17, 26–27; Dkt. No. 22 ¶¶ 4–9, Ex. A (July to Dec. 2022 damages report); Dkt. No. 1 ¶¶ 16–17. Finally, the Trusts assert that they have incurred $1,994.50 in attorney fees and $572.00 in litigation costs in their attempt to recover these delinquent payments and seek to recover both from PRP. Dkt. No. 23 ¶¶ 9–12, Exs. A (billing records), B (total damages summary).

The Trusts filed this lawsuit against PRP on October 28, 2022. *See generally* Dkt. No. 1. Based on the above-mentioned allegations, the Trusts bring a claim for violations of the MLA/IIA, Trust Agreements, and ERISA, 29 U.S.C. §§ 1132, 1145. *See generally id.*; Dkt. No. 20. The Trusts served a summons and copy of the complaint on PRP on

---

[4] PRP was provided with a copy of the audit and did not contest the findings. *See* Dkt. No. 23 ¶ 5; Dkt. No. 20 at 7.

November 6, 2022. *See* Dkt. No. 6. PRP has not appeared in this action or responded to the Trusts' complaint. On January 9, 2023, the Trusts moved for entry of default against PRP (Dkt. No. 7), and the Clerk entered default on January 13, 2023 (Dkt. No. 9). The Trusts now ask the Court to enter a default judgment against PRP in the amount of $266,340.27. *See* Dkt. Nos. 20, 20-1.

## II.  LEGAL STANDARD

If a defendant fails to plead or otherwise defend, the clerk enters the party's default. Fed. R. Civ. P. 55(a). Then, upon a plaintiff's request or motion, the court may grant default judgment for the plaintiff. Fed. R. Civ. P. 55(b)(2). Entry of default judgment is left to the court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Because granting or denying relief is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court-ordered judgment. *Id.* In exercising its discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake in relationship to the defendant's behavior; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the preference for decisions on the merits when reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Default judgment is a two-step process: first, the court determines that a default judgment should be entered; and second, the court determines the amount and character of the relief that should be awarded. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

917–18 (9th Cir. 1987). At the default judgment stage, well-pleaded factual allegations in the complaint, except those related to damages, are considered admitted and are sufficient to establish a defendant's liability. *Id.*; *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); Fed. R. Civ. P. 8(b)(6). The court must ensure that the amount of damages is reasonable and demonstrated by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b)(2); LCR 55(b)(2); *TeleVideo*, 826 F.2d at 917–18.

### III. DISCUSSION

**A.    Jurisdiction**

"To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

First, the Court has subject matter jurisdiction over this action because it is brought under the provisions of ERISA, 29 U.S.C. §§ 1132, 1145. *See* Dkt. No. 1 ¶¶ 5, 7, 14); 28 U.S.C. § 1331 (describing federal question jurisdiction). Second, the Court has personal jurisdiction over PRP because it is incorporated in Washington, has its principal place of business in Washington, and was properly served in Washington. *See* Dkt. No. 1 ¶ 4; Dkt. No. 6; Fed. R. Civ. P. 4(k)(1); *AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) ("[A] corporation is typically subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business." (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137-40 (2014))); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (stating that because ERISA provides for nationwide service of process, personal jurisdiction can be obtained by

properly serving a defendant anywhere in the United States (citing 29 U.S.C. § 1132(e)(2))). Accordingly, this Court has subject matter jurisdiction over this action and personal jurisdiction over PRP.

**B.     The *Eitel* Factors**

Below, the Court analyzes each *Eitel* factor and concludes that the factors weigh in favor of default judgment.

    **1.     The Possibility of Prejudice to Plaintiffs**

Under this factor, default judgment is favored where "the plaintiff has 'no recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). Here, despite timely service of process, PRP has failed to defend itself in this litigation. As a result, the Trusts will suffer prejudice if default judgment is not entered because they will "be denied the right to judicial resolution" of their claim. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005); *see Bd. of Trs. of U.A. Loc. No. 159 Health & Welfare Tr. Fund v. RT/DT, Inc.*, No. C12-5111, 2013 WL 2237871, at *4 (N.D. Cal. May 21, 2013) ("Because ERISA provides that federal courts have exclusive jurisdiction for claims of this nature, denial of Plaintiffs' Motion would leave them without a remedy."). This factor therefore weighs in favor of default judgment.

    **2.     The Substantive Merits and Sufficiency of Plaintiffs' Claim**

The second and third *Eitel* factors, which are frequently analyzed together, require the plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal.*

*Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The plaintiff satisfies this standard by making claims that "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). At the default judgment stage, the court "takes 'the well-pleaded factual allegations' in the complaint 'as true'"; however, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Cripps*, 980 F.2d at 1267.

In their complaint, the Trusts allege that PRP failed to pay employee contributions as required by the MLA/IIA, Trust Agreements, and ERISA and is therefore liable for unpaid contributions, liquidated damages, interest, audit accounting fees, attorney fees, and litigation costs. *See generally* Dkt. No. 1. Under Section 515 of ERISA, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement." 29 U.S.C. § 1145. Section 515 of ERISA creates a federal cause of action against employers who do not make timely contributions to employee benefit plans, and allows plan fiduciaries to enforce obligations created under the terms of the plan or collectively bargained agreement. 29 U.S.C. § 1132(a)(3), (g)(2); *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009). To establish a claim for unpaid contributions, the Trusts must prove: (1) that the Trusts are multiemployer plans as defined by 29 U.S.C. § 1002(37); (2) that the MLA/IIA and Trust Agreements obligated PRP to make employee benefit contributions; and

(3) that PRP failed to make contribution payments in accordance with the MLA/IIA and Trust Agreements. *See Bd. of Trs. of Sheet Metal Workers Health Care Plan of N. Cal. v. Gervasio Env't. Sys.*, No. C03-4858, 2004 WL 1465719, at *2 (N.D. Cal. May 21, 2004) (stating the elements of a claim to recover unpaid contributions from a multiemployer plan under ERISA).

The Court concludes that the Trusts have adequately alleged and supported each of these elements. The Trusts' complaint and supporting documents establish the following: (1) the Trust was set up as a multiemployer benefit plan under ERISA and the LMRA (*see* Dkt. No. 1 ¶ 2); (2) PRP executed the IIA binding it to the terms of the MLA, and thus, the Trust Agreements (*see id.* ¶¶ 9–11; Dkt. No. 21, Ex. B at 67–71; Dkt. No. 26, Ex. A at 24–28; Dkt. No. 21, Ex. A); and (3) PRP failed to make timely contribution payments required by the MLA and Trust Agreements for the months between October 2021 and June 2022 and failed to make any of the required contribution payments for the months between July and December 2022 (*see* Dkt. No. 1 ¶¶ 12–17; Dkt. No. 21 ¶¶ 13–17, 25–27; *id.*, Exs. H, I; Dkt. No. 22, Ex. A). Thus, the Trusts are entitled to any unpaid contributions, interest and liquidated damages on any unpaid and late-paid contributions, reasonable attorney fees, litigation costs, and audit accounting fees under 29 U.S.C. § 1132(g)(2), the MLA, and the Trust Agreements. *See infra* § III.D. Accordingly, both the second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake

The fourth *Eitel* factor weighs in favor of default when "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth*

*Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). Here, the Trusts request a total of $266,340.27 on default judgment: $2,566.50 for attorney fees and costs and $263,773.77 for unpaid contributions, liquidated damages, interest, and audit accounting fees. *See* Dkt. Nos. 20, 20-1; Dkt. No. 23, Ex. B. The remedies requested are specifically authorized under ERISA and the Parties' agreements. *See* 29 U.S.C. § 1132(g)(2); Dkt. No. 21, Ex. B at 62–63, 67–70; Dkt. No. 26, Ex. A at 19–20, 24–27; Dkt. No. 21, Exs. D–G. Thus, although the Trusts request a significant sum of money, the Court concludes that the recovery sought is proportional to the harm caused by PRP's conduct, which constitutes failing to timely remit reports and pay the required contributions and late fees. *See, e.g.*, *Bds. of Trs. of Locs. 302 & 612 Health & Sec. Fund v. Barry Civ. Constr., Inc.*, No. C21-0209, 2022 WL 17444075, at *3 (W.D. Wash. Dec. 6, 2022) (concluding that this factor weighed in favor of default where the $688,684.70 plaintiffs requested was authorized under ERISA and the CBA and settlement agreements). This fourth *Eitel* factor, too, weighs in favor of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

Because PRP has failed to appear, the Court must accept as true all well-pleaded allegations in the complaint, other than those related to damages. *TeleVideo*, 826 F.2d 917–18. Moreover, the Trusts state that PRP did not contest the audit findings. *See* Dkt. No. 23 ¶ 5; Dkt. No. 20 at 7. Accordingly, there is nothing to suggest a possible dispute of material facts, and this factor therefore weighs in favor of granting default judgment. *See, e.g.*, *Barry Civ. Constr.*, 2022 WL 17444075, at *3 (finding this factor weighed in

favor of default judgment where defendants did not appear and "[d]efendants' obligations were outlined in several agreements").

### 5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that the defendant's default resulted from excusable neglect. *PepsiCo*, 238 F. Supp. 2d at 1177 (noting that "the possibility of excusable neglect is remote" where a defendant participated early in a case, but later stopped participating). Generally, courts do not find excusable neglect "where a defendant was properly served with the complaint and notice of default judgment." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 889–90 (S.D. Cal. 2021). Here, the Trusts timely served PRP with a summons and copy of the complaint on November 6, 2022. *See* Dkt. No. 6. PRP's deadline to answer the complaint was November 28, 2022. *See* Fed. R. Civ. P. 12(a)(1)(A)(i); Fed. R. Civ. P. 6(a)(1). PRP did not file an answer, but the Trusts nevertheless waited until January 9, 2023 to file their motion for default. *See* Dkt. No. 20. There is nothing in the record to indicate that PRP lacked notice of the action or was misled. Accordingly, the Court concludes that PRP's failure to answer the complaint was not due to excusable neglect and that the sixth *Eitel* factor thus weighs in favor of default judgment.

### 6. The Preference for Decisions on the Merits

Although there is a preference for deciding cases on the merits, this preference is not absolute. *See Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09-1585, 2011 WL 1584424, at *3 (W.D. Wash. Apr. 27, 2011). Here, the "preference to decide cases on the merits does not preclude [t]he court from granting default judgment" because PRP's

"failure to answer [the Trusts' c]omplaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177; *see, e.g.*, *Barry Civ. Constr.*, 2022 WL 17444075, at *4 (reaching same conclusion in ERISA case). Accordingly, the Court concludes that the seventh *Eitel* factor does not preclude entry of default judgment.

Because the *Eitel* factors weigh heavily in favor of default judgment, the Court concludes that default judgment is warranted in favor of the Trusts on their claim against PRP.

**C.     Requested Relief**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Henry v. Sneiders*, 490 F.2d 315, 317 n.2 (9th Cir. 1974) (noting that a plaintiff need not specify an exact amount in his complaint in order to comply with Rule 54(c)'s requirement and prevail on a motion for default judgment). Defaulting defendants are not deemed to have admitted the facts alleged in the complaint concerning the amount of damages. *TeleVideo*, 826 F.2d at 917. A plaintiff "must 'prove up' the amount of damages that it is claiming." *Philip Morris*, 219 F.R.D. at 501; *see also* Fed. R. Civ. P. 55(b)(2); LCR 55(b)(2).

Here, the Trusts seek recover unpaid contributions, liquidated damages, interest, audit accounting fees, and attorney fees and litigation costs. *See* Dkt. No. 23, Ex. B; Dkt. No. 20 at 8–9; Dkt. No. 20-1. These damages do not differ from the relief requested in their complaint. *See* Dkt. No. 1 at 3-4; *Henry*, 490 F.2d at 317 n.2.

**1.     Unpaid Contributions, Liquidated Damages, Interest, and Audit Fees**

The MLA and Trust Agreements authorize the Trusts to recover unpaid contributions, liquidated damages, interest, and audit fees and contain specific provisions

for calculating the contributions to be made and the interest and liquidated damages assessed for delinquent contributions. *See* Dkt. No. 21, Ex. B at 62–63, 70; Dkt. No. 26, Ex. A at 19-20, 27; Dkt. No. 21, Exs. D–G. They also provide that the employer will be liable for any auditor fees incurred in the collection of delinquent contributions. *See* Dkt. No. 21, Ex. B at 70; Dkt. No. 26, Ex. A at 27; Dkt. No. 21, Exs. D–G. Moreover, under ERISA, awards of unpaid contributions, liquidated damages, and interest are required for successful claims of unpaid contributions brought by trust funds against employers. 29 U.S.C. § 1132(g)(2)(A)–(C); *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996).[5]

The Trusts filed declarations with exhibits showing the unpaid contributions, liquidated damages, interest, and auditing fees calculations. *See* Dkt. No. 23, Ex. B; Dkt. No. 21, Ex. H; Dkt. No. 22, Ex. A; *see also* Dkt. No. 21 ¶¶ 13–17, 25–27; Dkt. No. 22 ¶¶ 4–9. Based on the terms of the MLA and Trust Agreements and the evidence submitted by the Trusts, the Court concludes that the Trusts are entitled to recover: (1) $190,412.26 in unpaid contributions for the July through December 2022 delinquent period; (2) $31,214.32 in liquidated damages for the July through December 2022 delinquent contributions; (3) $16,846.63 in accrued interest on the July through December 2022 delinquent contributions; (4) $1,902.00 in audit accounting fees; (5) $18,076.66 in liquidated damages for the October 2021 through June 2022 delinquent

---

[5] To be entitled to a mandatory award under 29 U.S.C. § 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Albertson's, Inc.*, 104 F.3d at 257. Here, the Trusts have satisfied all three criteria. *See supra* §§ II, III.C.

contributions; and (6) $5,321.90 in accrued interest on the October 2021 through June 2022 delinquent contributions.

### 2. Attorney Fees and Costs

The MLA and Trust Agreements also provide that an employer shall be liable for reasonable attorney fees and litigation costs incurred in recovering delinquent payments. *See* Dkt. No. 21, Ex. B at 70; Dkt. No. 26, Ex. A at 27; Dkt. No. 21, Exs. D–G. Similarly, ERISA provides that the court must award "reasonable attorneys' fees and costs of the action" when a plaintiff obtains a judgment in their favor in an action such as this. 29 U.S.C. § 1132(g)(2)(D); *Albertson's, Inc.*, 104 F.3d at 258. In Noelle Dwarzski's declaration, she states that she spent 2.9 hours working on this matter at a rate of $275 per hour and 4.2 hours working on this matter at a rate of $285 per hour. Dkt. No. 23 ¶¶ 9–10 (stating that from October 26, 2022 through June 7, 2023, the Trusts incurred $1,994.50 in attorney fees consisting of 7.1 hours of Ms. Dwarzski's time). She also submitted an exhibit detailing the time spent on each task she performed in this matter. *See id.*, Ex. A. Further, Ms. Dwarzski states that the Trusts incurred $572.00 in litigation costs. *Id.* ¶ 11, Ex. B. The Court finds the billing rates, tasks performed, time spent, and litigation costs incurred reasonable and therefore recoverable under the terms of the MLA, Trust Agreements, and ERISA. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (describing how courts generally calculate "reasonable" attorney fees). Accordingly, the Trusts are entitled to recover $1,994.50 in attorney fees and $572.00 in litigation costs.

In sum, the Court GRANTS the Trusts' request for relief in its entirety.

## IV. CONCLUSION

Accordingly, the Court GRANTS the Trusts' motion for default judgment (Dkt. No. 20). Specifically, the Court ORDERS as follows:

(1) The Court GRANTS default judgment against PRP;

(2) The Court GRANTS the Trusts' request for $190,412.26 in unpaid contributions for the July through December 2022 delinquent period; $31,214.32 in liquidated damages for the July through December 2022 delinquent contributions; $16,846.63 in accrued interest on the July through December 2022 delinquent contributions; $1,902.00 in audit accounting fees; $18,076.66 in liquidated damages for the October 2021 through June 2022 delinquent contributions; and $5,321.90 in accrued interest on the October 2021 through June 2022 delinquent contributions; and

(3) The Court GRANTS the Trusts' request for $1,994.50 in attorney fees and $572.00 in litigation costs.

Dated this 12th day of July, 2023.

Tana Lin
United States District Judge